UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM M. TRAPANI,

    Plaintiff,

v.                                                                     Case No. 16-12714
19 MILE SENIOR HOUSING, LLC,
d/b/a VILLA BELLA OF CLINTON,

    Defendant.
_____/

## **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I. INTRODUCTION

Kim Trapani ("Trapani") filed suit against her employer 19 Mile Senior Housing, LLC, d/b/a/ Villa Bella of Clinton. ("Villa Bella"). She alleges that Villa Bella terminated her because of her age, in violation of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Villa Bella seeks summary judgment under Fed. R. Civ. P. 56. It argues there are no genuine issues of material fact regarding the legality of Trapani's termination.

### II. STATEMENT OF FACTS

Villa Bella hired Trapani in 2010 as a receptionist and subsequently promoted her to Community Liaison. She was responsible for leasing apartment units, giving tours of Villa Bella, maintaining the marketing budget, and conducting other marketing activities.

In 2013, the bank that financed Villa Bella expressed concerns to Villa Bella management about decreasing revenues and occupancy rates, and increasing expenses. In 2014, the bank hired a consultant to perform an operations assessment

1

through review of Villa Bella's revenue and expenses. The consultant recommended that Villa Bella could increase revenues and decrease expenses, by increasing its sales and marketing budget, and by paying Trapani bonuses and commissions for securing new residents. Villa Bella also reduced expenses by lowering cable, electricity, alarm system, and service management expenses. The bank then gave Villa Bella an extension until May 2014, to reach a 90% occupancy rate and lower its debt service ratio, to avoid default on its loan obligations.

In 2014, Trapani sent emails and text messages to Jennifer Kuczmarski ("Kuczmarski"), Villa Bella's Senior Property Manager, complaining that Julie Wilson ("Wilson"), Villa Bella's General Manager, and Karen Moreland ("Moreland"), Villa Bella's Assistant General Manager, were making it difficult for her to do her job and were "bull[y]ing" her. Wilson testified that there was tension between Moreland and Trapani because Moreland could not manipulate Trapani because of her maturity. Wilson testified that Moreland could, however, manipulate two receptionist, Honey Reynolds ("Reynolds") and Kristina Afram ("Afram"), because of their youth.

In late 2014, Kuczmarski met with Villa Bella owners and discussed financial issues. She suggested that the owners eliminate Trapani's Community Liaison position to reduce payroll expenses. In addition, she told the owners that the marketing department was the only one that could "absorb… a reduction because existing employees were available to perform the necessary job duties." (Doc. 15-1; Pg ID 80-1). Kuczmarski testified that the consultant did not recommend that Villa Bella cut the marketing and sales budget.

On January 3, 2015, Wilson fired Trapani, even though there was no issue with her performance, and occupancy increased during the last few months of 2014. Villa Bella argues that Melissa Ferlito, Owner and Managing Member of Villa Bella, made the decision to terminate with input from Kuzmarski. Wilson, Ferlito and Kuzmarski exchanged emails discussing Trapani's termination before the actual termination. Trapani says Wilson was involved in the decision to terminate as well.

Ferlito believed, based on Kuczmarski's information, that staff could absorb Trapani's job duties. Specifically, she believed Moreland, Wilson, and Afram and Reynolds, – both in their twenties – could give tours and provide marketing and sales support. After Villa Bella fired Trapani, it promoted Afram and Reynolds from part-time to full-time positions. They continued their receptionist duties and absorbed some of Trapani's duties, such as giving tours and entering information into "REPS" – a tracking system used to maintain information on prospective residents. Neither Reynolds nor Afram had marketing or sales experience.

Wilson and Moreland also absorbed some of Trapani's responsibilities, including: planning and overseeing advertising and promotional activities; public relations; maintaining department expenses within the budget; maintaining familiarity with Villa Bella's competitors, including their pricing, strengths and weaknesses; and, managing Villa Bella's involvement in trade shows, expositions, and outside events.

Following her termination, Trapani filed suit against Villa Bella, alleging age discrimination in violation of the ADEA. Villa Bella moves for summary judgment.

## III. STANDARD OF REVIEW

### a. Fed. R. Civ. P. 56

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2507, 91 L. Ed. 2d 202 (1986). The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514 (discussing FED. R. CIV. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. U.S.*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356, 89 L. Ed. 2d 538 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). The non-movant cannot rely upon bare assertions, conclusory allegations, or suspicions to substantiate his claims. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989).

### b. AGE DISCRIMINATION AND EMPLOYMENT ACT

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "The purpose of the ADEA… is to protect older workers from being 'deprived of employment on the basis of inaccurate and stigmatizing stereotypes,' and to ensure that employers evaluate their employees on the basis on their merits, and not their age." *Allen v. Diebold*, 33 F.3d 674, 676-77 (6th Cir. 1994). "Disparate treatment [as Trapani alleges] … captures the essence of what Congress sought to prohibit in the ADEA. It is

the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline[] with old age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).

The burden of persuasion is on Trapani to show that "age was the 'but-for' cause of [Villa Bella's] adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). Trapani "may establish a violation of the ADEA by either direct or circumstantial evidence." *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action." *Gieger*, 579 F.3d at 620 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)).

When there is no direct evidence of age discrimination, the claim is analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Blizzard*, 698 F.3d at 283. To establish a *prima facie* case relying upon indirect evidence of age discrimination, Trapani must establish that: "1) she was a member of a protected class; 2) she was discharged; 3) she was qualified for the position held; and 4) she was replaced by someone outside of the protected class." *Schoonmaker v Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010).

To overcome a *prima facie* case of discrimination, Villa Bella must "articulate a legitimate nondiscriminatory reason" for its action. *See Barnes v. GenCorp Inc.*, 896 F.3d 1457, 1465 (6th Cir. 1990)(citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). Afterwards, the burden shifts to Trapani to prove by a

6

preponderance of the evidence that Villa Bella's asserted reasons "were not its true reasons, but were a pretext for discrimination." *Id.* at 1464.

To establish pretext, Trapani must show "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her discharge], or (3) that they were *insufficient* to motivate discharge." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (emphasis in original) (internal quotation marks omitted). "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reasons or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4. (6th Cir. 2009). It is not enough for a plaintiff to simply disprove the employer's purported nondiscriminatory reasons; plaintiff must present evidence that age was a motivating factor in defendant's decision. Trapani has the burden to produce "sufficient evidence from which a jury could reasonably reject [Villa Bella's] explanation of why it fired her." *Id.* at 400.

## IV. DISCUSSION

Villa Bella says that Trapani has no facts to support a claim of differential treatment based on age and that Villa Bella had legitimate, non-pretextual reasons to terminate Trapani.

### a. Age Discrimination
#### i. There is a genuine issue of material fact whether Villa Bella replaced Trapani with someone outside the protected class

There is no dispute that Trapani establishes the first three elements of a *prima facie* case for discrimination: she is a member of a protected class, (she was 57 years old at the time of her termination); she was qualified for her position; and, she was fired.

However, there is a material dispute as to whether Villa Bella replaced her with someone outside of her protected class. *Schoonmaker*, 595 F.3d 261, 264.

Trapani argues that Villa Bella replaced her with Afram and Reynolds, both in their twenties. Villa Bella argues that it did not replace Trapani; it eliminated the Community Liaison position. It also argues Moreland and Wilson – who are both within the protected class – took over some of Trapani duties as well. Villa Bella contends that Afram and Reynolds performed some of Trapani's duties before Trapani was fired, and that receptionist duties took up fifty percent of their time after Trapani's termination.

Trapani relies on *Tinker v. Sears, Roebuck & Co.,* 127 F.3d 519 (6th Cir. 1997). In *Tinker*, the Sixth Circuit held that promoting a younger, part-time employee to full-time status to assume the discharged employee's responsibilities was tantamount to replacement. *Id.* at 522.

Here, Afram and Reynolds were part-time receptionists before Villa Bella fired Trapani. Villa Bella promoted them to full-time, and they assumed the marketing and sales responsibilities described above. Trapani is similar to Tinker. In *Tinker*, the employer had to promote an employee to full-time status, so he could handle his previous duties in addition to Tinker's duties. The Court held this fundamentally changed the nature of his employment. *Id.*

Villa Bella relies on *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) citing *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 (6th Cir. 1980), to argue "an individual is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another

8

employee is hired or reassigned to perform the plaintiff's duties." *Sahadi*, 636 F.2d at 1117.

Neither *Barnes* nor *Sahadi* supports the proposition that Villa Bella did not replace Trapani with employees outside her protected class. First, *Barnes* concerned a reduction in force ("RIF"), where an employer discharges a large number of employees at one time as opposed to only one employee. *Barnes,* 896 F.2d at 1468. Villa Bella only terminated Trapani. Courts apply a different standard of review to RIF cases than it does to one-person termination cases. In RIF cases, the consideration for the Court is whether the employee "was treated differently from similarly situated employees outside the protected class" and whether the employer "singled [the employee] out for discharge for impermissible reasons." *See Briggs v. Porter*, 463 F.3d 507, 514 (6th Cir. 2006). Second, *Barnes* relies on *Sahadi*, which applies a different standard of review. *Sahadi* went before a jury and the trial judge issued a directed verdict in the defendant's favor. *Sahadi*, 636 F.2d at 1117.

There are genuine issues of fact in dispute. Among them are: (1) whether Afram and Reynolds were responsible for some of the same duties as Trapani before Villa Bella fired her; (2) what Trapani duties they assumed; (3) whether Villa Bella eliminated Trapani's position or did other employees replace her; and, (4) which employees replaced her. The parties also dispute whether Reynolds and Afram were the only employees who assumed a majority of Trapani's duties.

These are genuine issues of material fact which prevent the Court from granting Villa Bella's motion for summary judgment.

### ii. There is a genuine issue of material fact whether age was the "but for" cause for Trapani's termination.

Assuming that Trapani establishes a *prima facie* case of discrimination, the burden shifts to Villa Bella to proffer a legitimate nondiscriminatory reason for Trapani's termination. *See Barnes*, 896 F.3d 1457, 1465. Villa Bella has proffered a reason for its action: the need to eliminate the Community Liaison position and redistribute those job duties to existing employees, so Villa Bella could allocate budgeted marketing expenses to different types of advertising. This sounds like a legitimate business reason to terminate Trapani and Villa Bella meets its burden to articulate a legitimate reason for Trapani's firing.

This articulation shifts the burden to Trapani to offer evidence of pretext. To establish pretext, Trapani must show "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her discharge], or (3) that they were *insufficient* to motivate discharge." *Chattman*, 686 F.3d 339, 349. "A showing of the third type of pretext is a direct attack on the credibility of [Villa Bella'] proffered motivation for terminating [Trapani] and, if shown, 'permits, but does not require, the factfinder to infer illegal discrimination from [Trapani's] prima facie case.' " *Id.* (quoting *Manzer*, 29 F.3d at 1084). "In other words, it creates a genuine, triable issue of material fact." *Id. Chattman*, 686 F.3d at 349 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994)).

Trapani contends that Villa Bella's proffered reasons for terminating her has no basis in fact because there was no "economic need" to eliminate the Community Liaison position. On one hand, there is this evidence: (1) Ferlito testified that she says she made the decision to eliminate the Community Liaison position, so Villa Bella could

reach its "bottom line number." (Doc. #17-6; Pg Id 726); and, (2) Villa Bella argues it "decided to eliminate the position in January of 2015 because other employees within the company could absorb Trapani's job duties, thereby reducing payroll expenses, which improved Villa Bella's debt service coverage ratio keeping Villa Bella out of default." (Doc. 16; Pg ID 215).

On the other hand, Villa Bella argues it "never suggested that it needed to eliminate the Community Liaison position and discharge [Trapani]…Ferlito…believed [Trapani] was expendable because others could absorb her job duties making it unnecessary to dedicate an individual solely to those duties." (Doc. 18; Pg ID 1088).

Trapani argues that Ferlito and Kuczmarkski cannot justify how eliminating her position assisted Villa Bella in receiving bank financing, since Trapani met the bank's required occupancy rate, the revenue was increasing because of her marketing experience, and the bank suggested that Villa Bella incentivize Trapani with commissions from sales.

Trapani argues that the proffered justifications did not actually motivate the termination. She relies on Wilson's testimony. Trapani's counsel asked Wilson "is there any other reason that you believe [Karen Moreland] would have selected [Afram and Reynolds]" and Wilson answered, "Karen put them there because she could manipulate them, without being questioned. Because [Trapani] would question [because] she had the knowledge. She knew what was expected of her." Counsel asked her if "[Trapani's] knowledge and experience came from her maturity" and Wilson answered, "I believe so." Wilson also said she believed Karen could manipulate Honey and Kristina because of their youth. Trapani argues that Wilson's testimony shows that Villa Bella hired Afram

11

and Reynolds, both younger employees, to absorb her responsibilities because of their "youth," which demonstrates that Villa Bella was motivated by Trapani's age.

Villa Bella says that the Court should give Wilson's testimony little weight because: (1) Wilson has no factual basis for her testimony; (2) she was not part of the decision-making process to terminate Trapani; and, (3) Wilson repeatedly complained about Trapani and urged management to terminate her because of her job performance. (Doc. #18; Pg ID 1091-92).

The record does show that Wilson communicated with Ferlito and Kuczmarksi about the decision to terminate Trapani: Wilson engaged in email discussions with Ferlito and Kuczmarski about the reason to terminate Trapani; Wilson is the person who told Trapani that she was fired; and, Villa Bella admits that Wilson urged management to terminate Trapani. The reason for the termination is at issue.

There are sufficient inconsistencies in the testimony and other evidence to create genuine issues of fact concerning pretext. Among them are whether: (1) Wilson was involved in the decision-making process; (2) age motivated the decisionmakers to terminate Trapani; and, (3) Villa Bella wanted to hire younger individuals.

Trapani presents sufficient evidence from which a jury could reasonably reject Villa Bella's explanation for her termination.

V. CONCLUSION

The Court to **DENIES** Villa Bella's motion for summary judgment. There are genuine issues of material fact as discussed above.

            S/Victoria A. Roberts
            Victoria A. Roberts
            United States District Judge

Dated: August 29, 2017

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 29, 2017.

s/Linda Vertriest
Deputy Clerk